Good morning again, everyone. We're going to continue now. We are reconstituted as Judge Rovner, myself, and Judge Kollar. We're going to continue with Appeal 24-1524, Citizens Insurance Company of America v. Mullins Food Products, Incorporated. Mr. Goodman will begin with you. Good morning. May it please the Court. I'm David Goodman. I represent Mullins Food Products in this appeal. This is an appeal from a decision in a coverage action brought by the Citizens Insurance Company after it denied Mullins' tender of defense in the underlying case, which is Galan v. Mullins Food Products. Galan is a putative class action that was filed in February of 2021, asserting claims for violation of the Illinois Biometric Information Privacy Act for arising from, in part, the publication of biometric information of its employees in violation of the statute, Section 15D. It's subject to a five-year limitation. It's been determined to be subject to a five-year limitations period, and thus it triggers three insurance policies, three general liability insurance policies issued by a Citizens Insurance Company. They differ in a material respect. The first policy, the one from 2015 through 2016, includes two exclusions that Citizens relies on as a basis of its denial, the recording and distribution exclusion and the employment-related policies or practices exclusion. And the other two... Oh, go ahead. Finish your sentence. No, no, no. And the other two policies also include the access and disclosure exclusions. Yeah, thank you. The access or disclosure exclusion strikes me as a much more discreet, specific, and straightforward exclusion than the recording and distribution exclusion. What is it about Mitsui's rationale as to the access or disclosure exclusion that you believe warrants reconsideration? I think that there are... I think it goes contrary to a fundamental rule of construction of insurance coverage. And I think that the issue is highlighted if you look at the portion of the decision that addresses the umbrella coverage in which the court found that the exclusion did not bar coverage versus its determination in the primary. And I think that I understand that the sections have different titles, but if you look at the rationale as to the determination as to the primary coverage, the court and its decision was based on a truncated version of the language in that provision. It looked at confidential or personal information and it failed to account for the things that the insurer had chosen to include in that. And it concludes, of course, with the or any other type of non-public information. So one is left to try to reconcile, what does this mean, any other type of non-public information? Is it including or referring to the list of examples of things that preceded it, which would include, among other things, patents? Patents are plainly not non-public information. They're expressly public information. How does one reconcile the terms that are used versus in the umbrella, it was, of course, a narrower, I mean, it had a different title, but if you read it in context, both provisions also talked about the use of this information and the means in which the use of that information would relate to a data breach. And again, the court looked at, in affirming the district courts, finding that the exclusion did not apply generally to BIPA information. It did it based on the title, but I think if you look at the language that's used in both of them and the exclusions itself, in other words, if you judge it not by its title, but by the content as well, I don't know how you can reconcile the reason. And so that's where we believe that the Mitsui case was erroneously decided with respect to the access and disclosure. Both, in fact, if you look at the two exclusions, both expressly use the words access to or disclosure of, and they talk about access to and disclosure of confidential information or personal information. So I find it very difficult to reconcile the two other than by looking at one has a title that says data breach and the other has a title that says access or disclosure of. That's, as we saw, the issue. And I think that the way they were read was read in a manner that's inconsistent with the approach taken by the Illinois Supreme Court in Krishna. Of course, Krishna did not address the access and disclosure endorsement at all, but it offered a paradigm for how one should read policies like this. You have to read them in context. I mean, of course, you do have to account for the title. That's what the court did in part, but it also looked at the language, and it looked at an understanding the other than language in the exclusion that it was considering. It looked at it in the context of what preceded it. So that's an answer to your question. It's a long answer, but that's, I think, the distinction. I think that's the error made in the construction of this exclusion. So, Council, just to be clear, you'd ask us to reconsider the Thermoflex holding as to the access and disclosure exclusion. I would, but I'd also suggest that, and this is an appropriate situation, we have a motion under Article 52. We do believe that this is an appropriate situation to certify the question back to the Illinois Supreme Court. And the reason is, this is an issue that has arisen numerous times. I think it's been addressed in the district court, I think, 12 times, and reached different decisions. And the fact that you reach different decisions in and of itself is indication of discord, disagreement. It doesn't prove one is right and one is wrong. It doesn't prove that the Seventh Circuit is incorrect. But it does suggest that this is a recurring situation. It's a situation that involves expressly state law. It is a legal issue. On that particular question, the certification issue, wouldn't it largely depend on whether for a variety of reasons, visual pack is incorrectly decided and decided in a manner that's inconsistent with Christian. But as to the certification of the access and disclosure exclusion, I think you can certify that and not certify the recording distribution exclusion. I think it's interesting that, in this case, Citizens asks the court, says that certification is inappropriate, but yet says that the two decisions by this court on the access and distribution exclusion were incorrectly decided. How do you reconcile that? I don't think you can. I think that where, and I think that visual pack in itself goes through why it's inconsistent with Krishna. But it would not be a basis for a district court to over, to fail to account this court's decision in Wendalco, which was directly contrary to the result that the district court reached. I mean, your question as to certification on Krishna, Krishna doesn't directly address access and disclosure. It just offers a paradigm for how that court was construing exclusions that are constructed in this manner. I have a real problem, I must say, with your urging us so strongly, actually with urging us at all, to certify the two exclusions that are at issue in this case to the Illinois Supreme Court, because it seems to me that Mitsui addresses and resolves both exclusions, one in your favor, one not in your favor. Whatever outstanding questions there, that there may be as to coverage of BIPA claims under other exclusions, I'm not sure. I'm really not sure what Mitsui leaves unresolved for this case. I mean, it's, there may be another case in the future, but. Well, again, I do believe that Mitsui resolves the issues as does Mendolco resolves the issues on the distribution reporting. I mean, I think that if you don't, if you don't accept that premise, and of course citizens hasn't, then, and if the court in this case, the lower court relied on visual PAC, I think in error, because the issue had been decided by this court and Mendolco. And then of course, Mitsui comes afterward and again, affirms that, no, if you look at Krishna, Krishna resolves this issue. If you follow the paradigm, it resolves the issue. There's no way of reading Krishna and visual PAC in a manner that are, that are consistent. And so. Well, is the reporting disclosure exclusion at issue here in, in, in our case, different in any material way from the statutory violation exclusion that's at issue in Mitsui? No. It's not, nor is it different in a material way from the, from the exclusion that was addressed in Mendolco. The reasoning though of the court in Mitsui, again, put to the side the reasoning in Mendolco and went back again to Krishna and looked at, again, how, how is one supposed to construe coverage like this? You say there's no difference, but there's a title change to the exclusion between Mendolco and Thermoflex or Mitsui. Well, but I think that the language actually used in the, in the exclusion itself is the same. And I think, again, you got to look at, and as the court did in Krishna, Schomburg, it looked specifically at the, what it was that the insurer chose to include, to identify what it meant. Otherwise, if you didn't read it that way, the catch-all would, would, would sort of swallow up the first, the first three paragraphs of the, of the exclusion. There isn't a way to reconcile that. So I think, you know, the title may be different, but I think you have to go beyond the title. I think you have to look at the words used. And that's, again, that goes back to our issue, our concern about how does one reconcile the words used in the two exclusions that were at issue in the access, you know, and disclosure exclusion in Mitsui. Would you like to reserve the remainder of your time? Yeah, I would. Thank you. Very good. Thank you, Mr. Goodman. Is it Ms. Ognebini? You may approach. Good morning. May it please the court, counsel. My name is Kelly Ognebini and I represent plaintiff Apelli Citizens Insurance Company of America in this action. The district court correctly held that citizens has no duty to defend or indemnify Mullins for the underlying suit, and that judgment should be affirmed for three reasons. First, this court, of course, has already addressed the access or disclosure exclusion in Thermaflex and found it unambiguously applies to preclude coverage for BIPPA lawsuits. Second, the Illinois appellate court has clearly now held that the applicability of the recording and distribution exclusion applies to BIPPA. And third, the indisputable facts here demonstrate that even setting aside these exclusions, Mullins' 10-month delay in providing notice to citizens of the underlying suit breached the notice condition as a matter of law. I'm sorry, your second point, is that on the access or disclosure exclusion or the others? The recording or distribution. Thank you. I'd like to ask you the same question, if I can remember, that I asked your friend, Mr. Kuttner, which is whether there is any material distinction between the recording disclosure exclusion at issue here and the statutory violation exclusion at issue in Mtsui. Why is Mtsui not controlling here? And because a rose is a rose by any other name, I call it Mtsui. Absolutely. Yes. So the exclusion that was at issue in Mtsui, the recording and distribution exclusion, is the same exclusion here. They are materially the same. So our citizens' argument is that this court has expressly held that where the state Supreme Court has not ruled on an issue, the decisions of the intermediate state court control, unless there is a persuasive indication that the highest state court would decide the issue differently. So we now have the visual PAC decision. And the Illinois appellate court's been very clear on where it stands on the issue of the recording or distribution exclusion. Isn't visual PAC, though, contrary to the interpretation of the recording exclusion in Thermaflex? Don't they look at it different ways? In Thermaflex, this court focused on the analysis set forth in Krishna. Right. And respectfully did not, I think, fully appreciate the material differences between the Krishna exclusion and this exclusion. And even this court in Wendelco noted that and found that those two exclusions are materially different. So it is our position. Sorry, did you want me to continue? Yes. That Krishna isn't controlling. That is a different prior exclusion. It had a different title. It did not have the Fair Credit and Reporting Act. It had a more limited, what we call, the catch-all, the final provision. And visual PAC- As part of our three-dimensional chess, though, you're asking us to say Mitsui Thermaflex controls for one exclusion, but doesn't control for another exclusion. We've also got Krishna being in Illinois Supreme Court. We've got visual PAC being in the Illinois Court of Appeals. There's a lot of competing interests here. Yes. With respect to Krishna, on the recording distribution exclusion, the visual PAC is directly on point. It deals with this specific exclusion. And so, yes, we are asking that the Thermaflex decision with respect to the recording and distribution exclusion be overruled to follow the Illinois State Appellate Court. Notably, the Illinois Supreme Court denied the petition for leave to appeal in visual PAC. And while contrary to Mullen's assertions, we're not arguing that that's a decision on the merits or that it's precedential, but what Illinois decisions do state and suggest is that the denial of the petition for leave to appeal does give a greater effect and stature to the appellate decision. And that's because when the Supreme Court decides whether or not to grant the petition for leave to appeal, it does so in accordance with Illinois Supreme Court Rule 315. It has to look at various factors that it considers in doing that, and those include whether there's an existence of a conflict between the decision sought to be reviewed and a decision of the Illinois Supreme Court, whether there's any division within the Illinois Appellate Courts, and the need for the exercise of the Supreme Court's supervisory authority. So the point being that if the Illinois Supreme Court saw a conflict between visual PAC and any of its other decisions, including Krishna, the logical conclusion is that it would have granted the review, and it could have done so. It did not do that. So counsel, we have Wendelco, and Wendelco didn't have the benefits of visual PAC, but then we have Thermoflex-Misui. Everything you're saying, if it's correct, Thermoflex-Misui could have taken into account visual PAC. And what the court did there, it acknowledged visual PAC, and it took another look at Krishna and came to the same conclusion as Wendelco. So we've now spoken twice on the recording and distribution policy, and you're asking us to change that based on the Illinois Intermediate Court. Is that correct? Yes. Yes, that's correct. To align with principles of federalism, we have this very unique situation where, as a practical matter, this split between the Seventh Circuit and the Illinois Appellate Court on a matter of Illinois state law, it's resulted in a situation where if there's coverage under the policy, depends on whether there's diversity jurisdiction between the insurance carrier and the insured. If not, then visual PAC is controlling, and the insurer has no duty to defend. If there is... Your client could also write the policies differently, correct? Well, I mean, the Illinois state court has found that it unambiguously applies. So it's, of course, it's a matter of Illinois state law, and this court has, of course, held on numerous occasions that it gives great weight to the decisions of the appellate court when there's no reason to suggest that the Illinois Supreme Court would do otherwise, and that's... Forgive me, because this may seem very simplistic, but okay, let's go through this. The Mitsui Court had the benefit of the Illinois Appellate Court's decision in that visual PAC, nonetheless concluded that the statutory violation exclusion did not apply to BIPPA claims. Unless there is some material difference between the exclusion and the recording and distribution, or I should say, I guess, let's see. Yeah, unless there's some material difference between that exclusion and the recording and distribution exclusion that's at issue here, what is there left for us to decide that we didn't already resolve in Mitsui? Well, respectfully, Honor, I think that there was little to no discussion at all about the differences between the Krishna exclusion and this exclusion, and the Thermaflux Court hung its hat on the Krishna analysis, but didn't seem to fully appreciate the material differences with that exclusion, so we're asking the court to retake a look at it in light of visual PAC, and the fact that Krishna is distinguishable, it's not controlling, and while visual PAC is the case that is directly on point with the policy language here. So because you believe the Illinois law has been decided in visual PAC, notwithstanding your disagreement in Thermaflux with the conclusion on Krishna, you also are against certification. That is correct, Your Honor. With respect to certification, it's appropriate where the question to be certified is outcome determinative of the case, and where the state Supreme Court has yet to have had an opportunity to illuminate a clear path on the issue. The applicability of the exclusions is not outcome determinative here. The court could completely set those exclusions aside and affirm the district court's judgment that citizens has no duty to defend or indemnify based on the late notice defense. So for that reason, we don't believe that certification is appropriate. But also, this court has repeatedly denied certification, whereas here the state Supreme Court has already been afforded the opportunity to address the questions and has declined to do so. In visual PAC, that policy had both of these exclusions in them, and the Illinois Supreme Court denied the petition for leave to appeal back in May of this year. For that reason alone as well, certification is not warranted. So Ms. Ognebisi, how do we reconcile visual PAC with our own horizontal stare decisis opinion in ThermoFlex? How do we deal with that? Because one panel of this court can't overrule another panel. What about that second half of the ThermoFlex opinion and how it deals with the exclusion? I mean, I think, like I said, the case wrongly focused on Krishna and it's visual PAC that is the controlling law. So we're just asking for the court to recognize that and be cognizant of that. Setting aside both of the exclusions. Counsel, can I, I just want to make sure I'm getting our decision tree correct. If we find for you on the access and disclosure exclusion, we still need to reach the recording and distribution exclusion because there's certain policy years that don't have the access and disclosure exclusion. Is that correct? That is correct. Alternatively, the court could find that the breach of the notice condition wipes out coverage under all of the policy years involved as well. But yes, you're otherwise correct. Do you happen to know which year that is? It's the very first policy, the 2015 policy. Yes. Now, with respect to the late notice defense, Mullins has argued in its briefs that citizens cannot raise this defense without having filed a cross appeal. However, the law in the circuit is clear that an appellee must only file a cross appeal when they are seeking to expand their own rights under the district court's judgment or diminish the rights of the appellant. Cross appeals, however, are not appropriate, whereas here we're just seeking affirmance on an alternate ground. The district court entered a judgment in this case stating that the court declares that citizens has no duty to defend or indemnify Mullins in underlying suit. In asserting late notice, citizens is not seeking to enlarge its rights or lessen Mullins' rights. We're not seeking additional relief and we're not attacking the district court's judgment. We're just merely seeking to have the court affirm that judgment that citizens has no duty to defend or indemnify pursuant to either the policy exclusions or the breach of the notice condition. The law... You know, I want to go back for a minute because I have at least two disagreements with VisualPAC and maybe you can help me. First of all, the court engaged in sort of a sleight of hand at the conclusion of its, you know, swallowing in quotes analysis. It waved away the possibility that some of the personal and advertising injuries purportedly covered by the insurance policy are largely, if not exclusively, statutory in nature and, you know, would thus be eliminated from coverage by virtue of the broad exclusion. Secondly, VisualPAC posits that sophisticated insurers like the plaintiffs there and all of you here would be able to discern from the exclusion that it's meant to address statutory privacy-related injuries, notwithstanding the fact that privacy is nowhere mentioned in the exclusion and that, for me, it's a fiction. So, um, you know, why am I wrong? And be careful. Well, Your Honor, I don't necessarily... It's not for me to say you're wrong. It was the Illinois State Appellate Court that made that decision and this being a matter of state law, I mean, court has said on various occasions that while you might feel you have the more enlightened, well-reasoned path and you very well may have, you are still to follow the Illinois law and decisions on the matter, whether or not they are agreeable. I do think, though substantively, that with respect to VisualPAC, I mean, the point that one of the points that the court was making is that there are several common law claims for privacy as well that the exclusion, it doesn't touch, it doesn't eviscerate coverage for those things and that's important. It's not illusory. Just because the exclusion doesn't cover all things that, I mean, that's what the purpose of an exclusion is. It's always going to limit the coverage provided by the insuring agreement. That's its purpose and so long as it does provide coverage for certain things and that still leaves intact coverage for the common law claims, then it should be enforced as written. Well, in any event, VisualPAC in the main distinguished our decision in Wendalco based on a difference in policy language. That is correct, Your Honor. They did note and find that it was the title of the two exclusions and the difference there was material. The inclusion of the word recording and information made it more reasonable to construe that exclusion as applying to privacy violations and that is when the district court in this case issued its ruling, focused on that as well because that was before the Mitsui decision had come down. But I think, I mean, the court was as correct and with respect that Wendalco is not the controlling case because the exclusions are different. Oh my, I think you're all geniuses, you who practice this law. I'm not kidding. Turning back to the the notice issued briefly. So this court, it's what's well settled that the court can affirm a judgment on any basis that is apparent from its review of the record just provided that the issue was raised and the losing party had a fair opportunity to contest it in the district court and the late notice issue was raised and fully briefed by the parties in the cross motions for summary judgment. Mullins had a fair opportunity to contest the issue and would not be prejudiced in any sort of way. Mullins, however, has failed to respond to the late notice defense on the merits in its appeal and so for that reason we would ask that the district court's judgment be affirmed even if the exclusions don't apply on the basis that they breach the notice condition as a matter of law. And then finally, the district court correctly granted judgment in citizens favor on the breach of contract claim. Of course it's axiomatic if there's no duty to defend there's no breach of the contract but the district court initially also found that even if citizens has no contractual obligation to defend it necessarily did not breach the policies because it timely filed this declaratory judgment action. Mullins does not dispute that this action was timely filed. Instead it conflates having a contractual obligation to defend with breaching that obligation. Those two things are distinct. An insurer's liability for defense costs just because it's found to have a duty to defend is not equivalent to having liability for breaching the contract that could include having to cover any settlement or judgment as well as any other damages that are traceable to the breach. So Mullins is in essence urging the court to find that an insurer must simultaneously file a declaratory judgment action and defend under a reservation of rights to avoid liability for breaching the duty to defend but that is clearly direct contravention of well-settled LMI law that affords insurers either option to avoid breaching its defense obligation. So for all these reasons we would ask that the court deny the motion for certification and affirm the district court's judgment. Thank you Ms. O'Neill. We'll now hear Mr. Goodman from you on rebuttal. Thank you. I would be remiss if I didn't begin with the last point or the second last point about the late notice issue. The court, the district court, concluded its decision on reconsideration vacating the decisions. The decision on late notice, it was vacated. It's not subject to appeal. It's not, there wasn't, he made the determination that there was no coverage based on the exclusions and thus did not need to reach the late notice issue and vacated it. So it isn't properly before the court on appeal. Going back I think to Judge Rovner's question about visual pack, I think another important issue to address and why the decision in Wendalco is correct is that the court in Wendalco, in Krishna, was specifically presented with the question of how it should go about interpreting and understanding the other than language in the exclusion. And one approach was to look at the statutes that were enumerated in the exclusion. The other was to look at the conduct that's identified following the other than language in the catch-all. And the Illinois Supreme Court, the first approach, the statutes identified that was identified by the, that was what the insured argued for and the other was looking at the conduct as here was what the insurer argued for. And the Illinois Supreme Court said, no, you look at the statutes. That's how you look at the title and you look at the statutes. So again, visual pack rejected that. Visual pack doesn't follow that paradigm. It's wrongly decided. With respect to the issue of the determination on summary judgment, I think that that's an important issue that when this case hopefully gets remanded to the district court ultimately for additional proceedings, because at a minimum, the reporting distribution exclusion has been addressed by this court now twice and found not to bar coverage for BIPA claims. In circumstances such as these, where an insurer chooses not to provide a defense, but instead brings a declaratory judgment action, by doing that, it's been well recognized for years and years and years that in doing so it preserves policy defenses. We don't contest that. What we do contest though is that it gets a free pass. In fact, in this particular policy and in many policies, the insurers reserve themselves the right where they choose to provide a defense and pursue a deck action to recoup the defense costs that they've expended on behalf of the insured if they're found not to have owed a duty to defend. The insurer has a choice. Here it made a choice. If the court finds ultimately that Mullins met its obligations in terms of the timeliness of notice and the claim was not barred by coverage, Mullins has incurred the cost of to defend itself. That is the breach. The cost that it has had to incur on its own because that's the whole point of the insurance policy. The coverage is to provide for a defense in circumstances like this, but in this instance, Mullins has had to bear that. That's the breach. Finally, going back to the issue about certification. Again, I think that before we get to certification, there is one other thing I'd like to say. I think it's important to bear in mind that again, the decision by the Illinois Supreme Court not to accept the petition for leave to appeal is not, and it's settled by the Illinois Supreme Court, cases that the insurer ignored, that is not perceived to be or should not be perceived to be a decision on the merits or in any way to any inference on the matter. The Illinois Supreme Court, for whatever reason, has chosen not to hear this. To be clear, in visual PAC, regardless of the number of exclusions that were presented, the only exclusion that was addressed in visual PAC was the reporting distribution exclusion. It did not address the access and distribution exclusion. Going back to the access and distribution exclusion and why we're seeking certification, it is an issue of great significance to people, not just in Illinois, but it's an Illinois issue because it's an Illinois statute, Illinois law. It's an issue that has been addressed by at least 10 district court decisions reaching different conclusions. In this case, in fact, the judge reached different conclusions based on his, you know, diametrically different conclusions as to whether it's ambiguous or not based on his reading of intermediate appellate court in the state of Illinois. I think, you know, and hence we've asked for certification of the issue because we do think it's an important issue of Illinois law that has not been decided. It is material to the outcome of this case because while it's not found in the initial policy, it is found in the other two policies, and it does impact Mullin's rights in this case in terms of ultimately in the event that it goes to trial and is looking to the insurer for indemnification for a judgment. Those policies would be called into play for that judgment. For the reasons addressed in our brief, for the reasons I tried to address today, we'd ask that the district court's decision be reversed and the case be remanded for trial and merits on the issue of at a minimum notice. Thank you, Mr. Goodman. Mr. Goodman argued Thermoflex Mitsui. Ms. Onyebine argued Wendalco. So we've heard from the experts. Thanks to both of you. The case will be taken to our advisement. Court will next call appeal 24.